# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

CHARLES CORN, JR., a child by,
KATHY CORN, as next friend,

        Plaintiff,

v.                                    Civ. No. 98-1375 JP/KBM

RANDY ADRIAN, The Athletic Director
and NEIL NUTTAL, Superintendent
of the Clovis Municipal Schools, in their
individual and official capacities,

        Defendants.

## MEMORANDUM OPINION AND ORDER

On April 17, 2000 Defendants filed a motion to dismiss Plaintiff's Second Amended

Complaint (Doc. No. 26) which will be granted in part.

## I.      Background

Plaintiff Charles Corn, Jr. seeks relief under 42 U.S.C. § 1983 because of a disagreement

over discipline that he received for the way he wore his hair.  On December 8, 1999, the court

dismissed the First Amended Complaint.  The court dismissed with prejudice Count One (a

familial association claim) and Count Two (a retaliation claim).  The court dismissed without

prejudice Count Three, an Equal Protection claim.  On December 23, 1999 Plaintiff filed a

"Second Amended Complaint for Damages, Declaratory and Injunctive Relief."

Plaintiff Charles Corn, Jr. is a resident of Clovis, New Mexico.  Defendants Randy Adrian

and Neil Nuttall are the Athletic Director and Superintendent, respectively, of the Clovis

Municipal Schools.  They are sued in their official and personal capacities.  According to the

Second Amended Complaint, Plaintiff as of December 1999 was a seventeen-year-old eleventh-

grader who attended Clovis High School.  Clovis High School is a part of "the Clovis Municipal

Schools."  (Second Am. Compl. ¶ 1.)  Plaintiff was subject to the Clovis High School's Athletic

Code of Conduct ("Code"), enacted in March 1997 and effective for the spring 1997 sports

season.  The Code prohibited, inter alia, ponytails and long braids for boys.  On a number of

occasions, various school officials disciplined Plaintiff for wearing his hair in a ponytail or braids.

Such instances include (1) when Plaintiff tried out for the track team in 1997 and was told that he

could not wear his hair pulled back in a ponytail, (2) when Plaintiff wore his hair in a ponytail

while traveling on the track team bus and when he ran in a track meet with his hair pulled back,

and (3) when he wore his hair in short braids to school without a ponytail restraint causing

Defendant Adrian to remove him from class several hours before athletics.  Plaintiff also indicates

that school officials did not uniformly enforce the Code against him and sometimes permitted him

to wear hairstyles which at other times they forbade.

       Plaintiff claims school officials applied the Code to other students less harshly and more

inconsistently.  For instance, Plaintiff alleges that (1) at the same tryouts for the 1997 track team

at which Plaintiff was disciplined, another male student athlete tried out with his hair in a ponytail,

(2) yet another male student wore a braided ponytail and braids during the 1997-1998 track

season, and (3) at the time when Defendant Adrian removed Plaintiff from class for wearing short

braids, Plaintiff's mother protested to Defendant Adrian that other male student track athletes

were allowed to wear braids, which Defendant Adrian allegedly claimed were acceptable due to

the styling.  Plaintiff also alleges instances in which other students violated sections of the Code

that did not concern hair restraints but were not disciplined.  Plaintiff avers, for example, that

members of the boys' soccer team wore earrings during the 1997 season and dyed their hair with

yellow streaks during the 1999 season.

**II.    Discussion**

Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6) on the ground that Plaintiff

failed in his Second Amended Complaint to meet the requirements for pleading an Equal

Protection claim, including those specified in this court's December 8, 1999 Memorandum

Opinion and Order.  Defendants in their individual capacities also again claim qualified immunity

from suit.  In reviewing a motion to dismiss, a district court must accept the allegations of a

plaintiff's complaint as true.  *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 770 (1994).

In doing so, a district court generally must indulge, in favor of a plaintiff, all reasonable inferences

of fact.  *See Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 533 (10th Cir. 1998).

To withstand a motion to dismiss based on qualified immunity, a plaintiff must establish

that (1) the defendants' alleged actions violated a federal right, or that plaintiff states a

constitutional claim, and (2) the right was clearly established at the time of the defendants'

actions.  *See Ramirez v. Department of Corrections*, 222 F.3d 1238, 1241 (10th Cir. 2000)

(citations omitted); *Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995) (citing *Siegert v. Gilley*,

500 U.S. 226, 232 (1991)).  The qualified immunity doctrine balances the need to compensate the

injured with the need to protect the government's ability to perform its functions  *See Lawmaster

v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 814,

819 (1982)).  The doctrine mitigates the cost of diverting official energy from important public

tasks and serves to terminate insubstantial lawsuits quickly.  *See id.* (citing *Harlow*, 457 U.S. at

814).  Qualified immunity is not simply a defense to liability but rather confers freedom from all

aspects of litigation.  *See Prager v. LaFaver*, 180 F.3d 1185, 1190 (10th Cir. 1999) (citing

*Harlow*, 457 U.S. at 818.)  It protects all but plainly incompetent public officers or those who

knowingly violate the law.  *See Greene v. Barrett*, 174 F.3d 1136, 1142 (10th Cir. 1999).

### A.    Alleged violations of the Equal Protection Clause

### 1.    Similarly situated

As an integral part of establishing that Defendants violated Plaintiff's rights under the

Equal Protection Clause, Plaintiff must allege that Defendants Adrian and Nuttall treated him

differently, and less favorably, than others similarly situated.  *See Trujillo v. Sanchez, No. 95-*

*2084, 1996 WL 32138 (10th Cir. Jan. 29, 1996); Tonkovich*, 159 F.3d at 532.  Dissimilar

treatment of dissimilarly situated persons does not violate the Equal Protection Clause.  *See*

*United States v. Woods,* 888 F. 2d 653, 656 (10th Cir. 1989).[1]  I previously dismissed Plaintiff's

equal protection claim with explicit instructions to remedy, if possible, a failure to explain how he

was similarly situated to others.  Plaintiff now identifies different individuals and groups with

---

[1] Neither does the fact that school officials may not have consistently enforced the Code against
Plaintiff.  Again, an equal protection claim requires a comparison to others.  Similarly, Plaintiff
derives no equal protection claim from alleging why school officials at times enforced the Code
against him.  Plaintiff's retaliation claim was dismissed with prejudice for reasons previously
explained.

whom he may be similarly situated.[2]  Thus, the court must determine how to define the class of similarly situated people.

 *Francis v. Runyon*, 928 F. Supp. 195 (E.D.N.Y. 1996) succinctly addresses the question.

> [Students] are not 'similarly situated' merely because their conduct might be analogized.  Rather, in order to be similarly situated, other [students] must have [1] been subject to the same standards governing performance evaluation and discipline, . . . [2] must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it, and [3] . . . must have reported to the same [coach, administrator, etc.] as the plaintiff.

*Francis,* 928 F. Supp. at 203 (citation omitted).

 Although *Francis* is not an equal protection case, its clear and concise explanation of the "similarly situated" standard appears consistent with equal protection caselaw in the Tenth Circuit.  The first requirement, that other persons be subject to the same law or policy as Plaintiff, is easily met and not at issue in a case such as this where unequal enforcement of a law or policy is alleged.  *See, e.g., Tonkovich* at 532-33.  The second requirement, of similar and undistinguishable conduct, is also important to the Tenth Circuit's analysis.  In *Tonkovich*, for

---

[2] While Plaintiff presents others with whom he may be similarly situated, he actually seems to believe, without providing any support, that he does not have to do so.  To the extent he implies that Defendants have incorrectly argued for or invented the "similarly situated" requirement, Plaintiff is, of course, mistaken.  To the extent he argues that he is a class of one, Plaintiff simply conveys that he was the only one suffering discrimination and is of no assistance in defining the class of similarly situated people.  Further, he is not aided by contending that he must conduct discovery concerning Defendants' alleged retaliatory motive before responding to Defendants' motion.  Plaintiff's burden, which he has now had two chances to meet, is only to allege that there are others with whom he is similarly situated but who were not treated adversely in the same manner.  Again, Plaintiff's retaliation claim, which he seems determined to attempt to revive, has been dismissed with prejudice for reasons already explained.

example, the plaintiff was charged with exploiting a student by engaging her in a discussion of grades and then having sexual relations with her. *See id.* at 532. Accordingly, the plaintiff's claim that he was similarly situated to other professors who dated students fell short. *See id.* The plaintiff did not simply date a student but rather engaged in a different kind of conduct which he failed to allege of other professors. *See id.* With respect to the third requirement, that the decision-maker be the same, the Tenth Circuit concluded in *Trujillo* that the plaintiff could not claim he was similarly situated to other faculty members because he had failed to allege that the same decision-maker was involved in the other faculty members' cases as in his. *See Trujillo*, 1996 WL 32138 at **2.

Plaintiff suggests a broad class of students with whom he is similarly situated.[3] He contends the class includes male students who wore earrings or dyed their hair, in violation of the Code but were not punished. Defendants claim Plaintiff compares apples to oranges. The court agrees. While the Code bans not only ponytails and long braids but also earrings and dyed hair, these various prohibitions are not alike for equal protection purposes. While wearing earrings may be analogous to wearing a ponytail, I find that it is not sufficiently alike to maintain this equal protection claim. The relevant inquiry in this case for determining whether others are similarly situated is whether other male students violated the prohibition on ponytails and long braids without punishment. Accordingly, the assertions in paragraphs 36, 38-39, and 45-46 are

---

[3] Plaintiff also identifies several instances where school officials punished him because of his hair (*See, e.g., Second Am. Compl.* ¶¶ 18, 21, 22, 25, 31-33, 38, and 42). However, punishment, by itself, does not constitute unequal treatment.

inadequate.

In paragraph 40, Plaintiff alleges that "[d]uring the 97-98 track season, Milton Finch a fellow male Team member of Plaintiff's track team wore both a braided ponytail and braids and suffered no discipline."  Defendants protest that there is no allegation that anyone *permitted* Milton Finch to wear his hair in the alleged manner.  In addition they object to the fact that Plaintiff does not allege that Milton Finch wore a ponytail or braids during covered athletic events.  It is true that Plaintiff's allegations are less than comprehensive, especially given the directive in the December 8, 1999 Memorandum Opinion and Order to "articulate clearly and specifically" how Plaintiff states an equal protection claim.  However, any omissions concerning the "similarly situated" requirement with respect to the allegations in paragraph 40 are non-fatal. Making all reasonable inferences in Plaintiff's favor, as a court considering the allegations of a complaint must, it can reasonably be assumed that Plaintiff is claiming he and Milton Finch wore a ponytail and/or braids during the same track season and that both he and Milton Finch wore their ponytails and/or braids during track team practices and/or meets.  Accordingly, it can be further reasonably assumed that the same Clovis High School track coaches who punished Plaintiff were aware of Milton Finch's conduct and permitted it.  As to any failure to allege that Milton Finch only wore a ponytail or braids during covered athletic events, it is far from clear that Clovis High officials considered the Code applicable only during athletics.  (*See, e.g.*, Second Am. Compl. ¶ 22 (alleging Plaintiff was punished for his hairstyle during an academic class)).  Plaintiff thus sufficiently shows in paragraph 40 that he is similarly situated to others for stating an equal protection claim.

The assertions in paragraphs 18 and 19 are similar to those in paragraph 40 and give rise to a similar result.  Plaintiff alleges in paragraphs 18 and 19 that he and another student, Jonathan Tenorio, each tried out for the track team in 1997.  According to Plaintiff, Jonathan Tenorio was allowed to wear a ponytail but Plaintiff was told he could not.  Defendants protest that these allegations "are devoid of any indication that the same decision-maker was involved."  (Def.'s Mem. Supp. Def's Mot. Dismiss Second Am. Compl. at 3).  True, Plaintiff is less than explicit.  Nonetheless, it is reasonable to infer for purposes of a motion to dismiss that the same coach who disciplined Plaintiff was also aware of Jonathan Tenorio's ponytail.  Therefore, by inference paragraphs 18-19 sufficiently support an allegation that Plaintiff is similarly situated to others.

In paragraphs 22-24, Plaintiff suggests another example of allegedly unequal treatment which also meets Equal Protection Clause pleading requirements.  According to paragraph 22, Plaintiff on April 10, 1997 wore his hair in "short braids" to school, without a ponytail restraint.  Over five hours before athletics were scheduled to start, Defendant Adrian removed Plaintiff from his academic class and told Plaintiff that his hair that day was unacceptable.  Paragraphs 23 and 24 contain allegations that several male student athletes wore braids and did not suffer discipline as a result.  Defendants argue that Plaintiff makes clear that these other students were not similarly situated because the Second Amended Complaint mentions that Defendant Adrian told Plaintiff's mother that the hair of the other students was distinguishable based on the styling.

Plaintiff describes his own hair as being in "short braids" and that of the other students as being in "braids."  (Second Am. Compl. ¶¶ 22-24.)  If other students wearing short braids, acceptable under the Code, were not disciplined but Plaintiff was, his allegation may support an

equal protection claim.  If the other students' braids were long, proscribed by the Code, but those students went unpunished while Plaintiff did not, then he again may state an equal protection claim.  Plaintiff's subsequent inclusion of his mother's conversation with Defendant Adrian, in which Defendant Adrian states that Defendant was disciplined for the style of his braids, could perhaps imply that others with braids are actually not similarly situated.  However, indulging Plaintiff in all reasonable inferences of fact, paragraphs 22-24 sufficiently support an allegation that Plaintiff was similarly situated to others.[4]

Paragraphs 34-35, 37, 45, and 52 allege general, non-specific instances of dissimilar treatment and appear merely to summarize more precise charges made elsewhere.  None of the remaining paragraphs even conclusorily relate to whether others were similarly situated to Plaintiff.

### 2.    Defendants' roles

What remains then are three somewhat distinct instances in which other allegedly similarly situated students allegedly were treated differently.  Defendant Adrian is obviously alleged to have played an active role in the claim concerning the incident of April 10, 1997 and is alleged to have

---

[4] The court is perplexed by Plaintiff's failure to be more explicit in his allegations in his Second Amended Complaint in view of this court's clear directions that accompanied the granting of permission to file yet another amended complaint.  The court has to this point reached far in assuming what Plaintiff intended to plead in order to set forth a valid claim.  While as explained infra Plaintiff does plead, in paragraphs 22-24, one allegation that satisfies even a heightened pleading standard, that claim does not appear especially robust.  Defendant Adrian will of course have an opportunity to address the surviving claim by a Rule 56 motion for summary judgment.  If it turns out that there is no factual basis for the claim, Plaintiff and his counsel will be expected to fully explain to the court how their allegations in paragraphs 22-24 complied with Fed. R. Civ. P. 11.

knowledge of other similarly situated students who went unpunished.  Section 1983 liability

requires direct involvement in discriminatory conduct or at least reckless acquiescence in the

unconstitutional conduct of others.  *See Woodward v. City of Worland*, 977 F.2d 1392, 1399

(10th Cir. 1992); *Wiggins v. New Mexico State Supreme Court Clerk*, 664 F.2d 812 (10th Cir.

1981); *see also Lewis v. City of Ft. Collins*, 903 F.2d 752, 755 (10th Cir. 1990) (noting intent is

an essential element of an equal protection claim).  Granting Plaintiff the reasonable factual

inferences to which he is entitled at this stage of the case, it is fair to conclude that he adequately

states an equal protection violation in paragraphs 22-24.  It is also my finding that his allegations

of fact relating to the events described in paragraphs 22-24 are sufficiently specific to meet any

heightened pleading standard.  *See Ramirez*, 222 F.3d at 1241.

It is less clear, however, whether Plaintiff adequately claims a constitutional deprivation

with respect to Defendant Adrian and the other alleged equal protection violations as to which

Plaintiff has met the "similarly situated" requirement.  Specifically, it is unclear whether Defendant

Adrian had any responsibility for preventing Plaintiff from, or punishing Plaintiff for, wearing a

ponytail during tryouts for the 1997 track team or for similar actions during the 1997-1998 track

season.  However, Plaintiff does aver that Defendant Adrian punished him on or about April 14,

1997 for wearing a ponytail on the track team bus.[5]  Viewing this allegation in a light most

favorable to Plaintiff, he sufficiently establishes Defendant Adrian's direct and intentional

---

[5] He also alleges that both Defendants punished him for wearing a ponytail at a pep rally.  He does
not allege that any other students were permitted to wear ponytails or braids at pep rallies.
Further, barring ponytails at pep rallies is not sufficiently similar to permitting ponytails during
track tryouts or at track meets.

involvement in prohibiting conduct by Plaintiff similar to conduct by Jonathan Tenorio and Milton Finch during various track-team related events.

However, there is no non-conclusory allegation, or any reasonable inference to be made, that Defendant Adrian had anything to do with permitting the conduct of Jonathan Tenorio and Milton Finch.  (*See* Second Am. Compl. ¶¶ 6-7, 51.)  Plaintiff alleges that Defendant Adrian was the Athletic Director during the time in question, not a track or soccer coach.  From this, it appears that Plaintiff seems to advance a theory of supervisory liability.  As Plaintiff does not allege that Defendant Adrian, directly or with more than gross negligence, permitted some conduct which should have been punished, such a theory is unwarranted.  *See Woodward*, 977 F.2d at 1399.  For similar reasons, Plaintiff fails to allege Defendant Superintendent Nuttall violated a constitutional right with respect to all of the factual allegations concerning similarly situated individuals and Plaintiff.

**B.     Clearly established law**

What remains now is Plaintiff's allegation against Defendant Adrian for violating the Constitution by removing Plaintiff from class because of Plaintiff's hair, while not responding in like fashion to similar conduct on the part of other students.  Plaintiff fails to allege an equal protection claim with respect to all other factual allegations.[6]  Moreover, he certainly does not meet any heightened pleading standard applicable because of Defendant's immunity defense.  *See*

---

[6] Consequently, as to all of these other allegations Defendants in every capacity are entitled to dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, although as explained *infra* Defendants in their individual capacities would also be entitled for a ruling in their favor based on qualified immunity.

*Ramirez*, 222 F.3d at 1241.  The next step then is to determine whether Plaintiff has met his

burden of showing that the right allegedly violated was clearly established at the time, such that a

reasonable official would understand that his conduct violates the Constitution.  *See Pueblo*

*Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988).[7]

      "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court

or Tenth Circuit decision on point, or the clearly established weight of authority from other courts

must have found the law to be as the plaintiff maintains."  *Medina v. City and County of Denver*,

960 F.2d 1493, 1498 (10th Cir. 1992).  Constitutional rights are of course clearly established, but

for a plaintiff to repeat this truism without more factual precision is to fail to meet his burden.  *See*

*Anderson v. Creighton*, 483 U.S. 635, 639 (1987).  Instead, a plaintiff must search for and find

some measure of factual correspondence between his case and another upholding a similar right.

*See Eastwood v. Department of Corrections*, 846 F.2d 627, 630 (10th Cir. 1988); *cf. Jantz v.*

*Muci*, 976 F.2d 623, 629 (10th Cir. 1992) (requiring "substantial correspondence").  While the fit

need not be precise, some measure of similarity is necessary so that the unlawfulness of a

defendant's conduct will be apparent in light of preexisting precedent.  *See Lybrook v. Board of*

*Education*, --- F.3d ---, --- (10th Cir. 2000).

      *Jantz* illustrates.  In *Jantz*, the plaintiff alleged that the defendant violated his right to equal

protection when the defendant failed to hire the plaintiff because of the plaintiff's perceived

---

[7] Although the analysis that follows pertains only to Defendant Adrian's removal of Plaintiff from
class, that allegation is sufficiently like the other alleged conduct so that the analysis concerning
clearly established law would, but for Plaintiff's failure to state a claim, apply to any other
allegation in this case as well.

homosexual tendencies.  *See Jantz*, 976 F.2d at 626.  The Tenth Circuit found that *Anderson* and

Tenth Circuit case law required, at a minimum, that Plaintiff examine how courts have treated

classifications affecting homosexuals.  *See id.* at 629.  It was insufficient for the Plaintiff to claim

simply that clearly established law held that a desire to harm an unpopular group cannot withstand

rational basis review.  *See id.* at 628.

Plaintiff in this case has also not met his burden.  The cases to which Plaintiff cites do not

clearly establish to the reasonable school administrator that because he sometimes does not

enforce a school grooming code he violates the Equal Protection Clause of the Fourteenth

Amendment to United States Constitution when at other times he does enforce it.  Plaintiff cites

*City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985) and *Bankers Life & Cas. Co. v.

Crenshaw*, 486 U.S. 71 (1988) for the proposition that the Equal Protection Clause bars arbitrary

discrimination.  However, Plaintiff's overly general use of these cases is just the type of analysis

against which the Supreme Court cautioned in *Anderson*.  Moreover, these cases are not

sufficiently similar to create law clearly applicable to this case.  *City of Cleburne* applied the

rational basis test to overturn a local regulation requiring a special use permit for a group home

for the retarded.  *See City of Cleburne*, 473 U.S. at 448-50.  *Bankers Life* applied the same

standard to uphold a statute penalizing losing appellants.  *See Bankers Life*, 486 U.S. at 83-85.

These cases are simply too far factually afield to have made the relevant law apparent.

The Court of Appeals decisions to which Plaintiff cites for general propositions are no

more favorable to Plaintiff.  In *Jacobs, Visconsi & Jacobs Co. v. City of Lawrence*, 927 F.2d

1111, 1118-19 (10th Cir. 1991) the court found that application of a city land use plan which

13

resulted in differing treatment among different developers did not violate the Equal Protection

Clause.  And in *Landmark Land Co. v. Buchanan*, 874 F.2d 717, 722 (10th Cir. 1989), *abrogated*

*in other part by Federal Lands Legal Consortium ex rel. Robart Estate v. United States*, 195

F.3d 1190 (10th Cir. 1999), the Tenth Circuit did not even reach the equal protection question.

Those decisions to which Plaintiff cites somewhat more specifically still do not aid him in

meeting his burden.  As Plaintiff points out, the Tenth Circuit in *Jantz* examined established

caselaw which had found that a bare desire to harm an unpopular group violated the Equal

Protection Clause.  *See Jantz*, 976 F.2d at 628.  But, as discussed *supra*, such a finding in prior

cases was not sufficiently specific for Plaintiff to meet his burden in applying the law to the facts

of his case.  *See Jantz*, 976 F.2d at 629.  The court then found that the law concerning

classifications which treat homosexuals disparately was sufficiently unsettled so that the defendant

was entitled to qualified immunity.  *See id.* at 630.  In *Oona v. McCaffrey*, 143 F.3d 473, 476 (9th

Cir. 1997) the Ninth Circuit held that clearly established law in that Circuit outlawing purposeful

discrimination by public school officials precluded an immunity claim.[8]  However, *Oona* involved

intentional sex discrimination.  Thus, the facts of *Oona* and *Jantz* are quite different from those of

this case.  Moreover, *Oona* is of course not controlling authority in the Tenth Circuit.

Instead, the law of the Tenth Circuit reasonably and objectively suggests that Defendants'

actions were not clearly unlawful.  For instance, it is settled law in the Tenth Circuit that state

---

[8] Plaintiff failed to note that the decision which he actually cited, *Oona v. McCaffrey*, 122 F.3d
1207 (9th Cir. 1997), had been withdrawn.  The superseding opinion cited above, however, is
unchanged in relevant part.

school boards and officials have wide latitude "in their promulgation and enforcement of dress-hair codes." *See New Rider v. Board of Educ.*, 480 F.2d 693, 700 (10th Cir. 1973).  It is similarly established that "[t]he supervision and regulation of high school athletic programs remain within the discretion of appropriate state boards, and are not within federal cognizance under 42 U.S.C. § 1983 unless the regulations deny an athlete a constitutionally protected right or classify him or her on a suspect basis." *See Albach v. Odle*, 531 F.2d 983, 985 (10th Cir. 1976).  School officials, such as teachers and administrators who actually apply school regulations, are also vested with a measure of discretion.  *See Bertot v. School Dist. No. 1*, 522 F.2d 1171, 1184 (10th Cir. 1975).  *New Rider*, *Albach* and *Bertot* thus could have reasonably suggested to Defendant Adrian that his acts did not violate the United States Constitution.  Moreover, when these cases are read in conjunction with the absence of any factually similar contrary authority, it is quite apparent the Defendant Adrian is entitled to qualified immunity from suit.

III.    **Conclusion**

Plaintiff sues Defendants in their individual capacities for damages and in their official capacities for injunctive and declaratory relief.  I have found that Plaintiff has failed to state a claim except with respect to the equal protection allegation against Defendant Adrian for removing Plaintiff from class while treating other similarly situated students more favorably.  Thus, with respect to all allegations except this, Plaintiff's claims against Defendants in their individual and official capacities will be dismissed.  As to the remaining allegation, I have found that Defendant Adrian is entitled to qualified immunity because the relevant law was not clearly established.  However, qualified immunity is not a defense to official capacity suits.  *See Kentucky*

*v. Graham*, 473 U.S. 159, 167 (1985).  Therefore, Plaintiff's case should proceed against

Defendant Adrian in his official capacity for injunctive and declaratory relief.

IT IS THEREFORE ORDERED THAT Defendants' motion to dismiss is granted and that

Plaintiff's Second Amended Complaint will be dismissed with respect to

(1) Plaintiff's claims against Defendants Adrian and Nuttal in their individual capacities

and

(2) Plaintiff's claims against Defendant Nuttall in his official capacity.

_____

**CHIEF UNITED STATES DISTRICT JUDGE**

16